Thank you, Your Honor. Good morning. May it please the Court, Bill Woodson for Mr. Teutscher. Mr. Teutscher's background in law enforcement afforded him an opportunity to see lots of cases of embezzlement, improper use of funds, etc. So when he became the legal operations manager, he was perfectly suited for the job of keeping track of applications for money used to defend the officers from a trust fund. He wasn't perfectly suited to some legal questions which came his way, I guess. Well, a variety of questions came his way, Judge Fletcher, including questions about whether a particular deputy's alleged offenses fit the purposes of the trust document, which says these offenses have to be related to on-the-job duties and responsibilities. And chopping down your ex-girlfriend's trees, filling her driveway with gravel, and stalking her did not appear to him to be the sorts of things that the trust document covered. So he raised concerns. It's sort of like an insurance company that decides if it's your own fault, we don't cover you. Exactly. If it's not within the policy. Except the insurance company is not allowed to do that. Well, here, and Mr. Toitcher did not make the final decisions. He simply made recommendations. The board, the... Well, the complaint says he socked me in the nose on purpose. Count two, he negligently bumped my nose with his fist. The insurance company has to cover it. He's performing a similar function for the sheriff's union. Well, he doesn't make the actual determination. He simply makes a recommendation. And internally, he made... He's denying coverage. Well, he doesn't get to say whether coverage is given or not. Well, let me ask you a different question. Okay. It looks to me like the whole case comes down to the Ratobanco issue. Because the judge said the reason there's no genuine issue of fact is that I'm striking the declaration where he says they told me I was firing, that they were firing me because I went outside. He said under oath that he was not told that. He said under oath, as I recall, that they told him they were firing him because of insubordination, not getting along with the supervisor, and nothing else was said. And I don't see how to get around in order to get past Ratobanco and nothing else was said. First of all, we argue that that document should not be used under the California Unemployment Insurance Code sections. But even if that sentence or that third reason for termination were stricken under the sham affidavit doctrine, there is plenty of other evidence of retaliation that the trial court acknowledged was not subject to the sham affidavit doctrine. Plenty of such evidence, and I'd be happy to talk about that. Is there any inconsistency between these two documents? Which two documents, Your Honor? Well, the one where he testifies that he was fired because they said that he was disloyal, and the one in which he said, well, they fired me because I ratted on some people. Your Honor, here's the actual record, factual progress of September. I think this is very important for the court to understand. But first, say, do you think it qualifies as a sham? I do not, but the reason I don't is because Mr. Teutcher's position before the Unemployment Insurance Board was I was fired because I made complaints internally. That is the same thing he says in the lawsuit. The only difference is in the letter, which was not sworn, but a letter submitted to the EDD, he said, well, when I was terminated, this is the 13th of September, six days after the meeting at Penfold's, which I will contend is critical, but on the day of my termination, Mr. Cunningham said the following. Look, we don't get along with each other. You don't get along with me. I don't get along with you. We question your loyalty to Pat on the Winchell cases, and you went outside to law enforcement. That's what he testifies to. That's what happened. In the EDD letter, he said the first two reasons, and he left out the third. Is that blatantly inconsistent? He didn't just leave it out. He said, and nothing else was said. I understand, Your Honor, and the argument is that that third reason, therefore, should be stricken. But that doesn't say anything about all the other evidence that was before the court. It seems to me that lack of loyalty, that was because he had gone outside to complain to law enforcement. That could be wrapped up in that. I agree with you, Your Honor. So it seemed to me that there was no inconsistency, that they were really the same thing. And what we're talking about are arguments before the jury and reasonable inferences to be drawn from the arguments. But I would call the court's attention to the following sequence. Mr. Toitcher is put out on suspension for allegedly throwing a file at Ms. Conrad. And he's out on suspension when the two, Cunningham and Toitcher, meet at Penfold's for lunch. Now, he's already been told by Pat McNamara, while he's out on suspension, that Tanya Conrad has recanted all of these allegations against you. Mr. McNamara says, and you'll be back to work soon. So both Cunningham and McNamara say that Tanya Conrad's stuff is gone. There's no basis for termination now. But he's out on suspension, so he and Mr. Cunningham meet for lunch. In that meeting, it starts off very cordially. Everything's fine. And if you look at the record at page 193, you'll see that Mr. Cunningham says under oath, as of the beginning of the meeting at Penfold's on September 13th, I did not have in mind to terminate Mr. Toitcher. And I pressed him further. Very important reading on page 193. I said, well, what do you mean you hadn't quite gotten there? Well, I wanted to talk to Mr. Toitcher and see if he was the kind of guy that would work with me. Notice what that doesn't say. Counsel, I appreciate your recitation of these facts, and they are, of course, important. I want to focus for a minute on more of a pleading issue. Okay. I did not see any cases from you indicating that it was improper for the district court to determine whether there was a genuine issue of material fact in evaluating California Labor Code Section 1102.5 claims. Did I miss that? Did you cite some cases that indicated that what the district judge did in making the determination was, at least from a case law perspective, improper? Only the plain language of the statute, Your Honor. Okay. I may not have actually referred the court to a case. At the summary judgment stage when you're applying the McDonnell-Douglas framework, I didn't see where there was a problem. It seemed like you were saying you couldn't do that because it's an 1102.5 claim. Did I misunderstand that? I did not mean to say to the court that you can't summarily adjudicate an 1102.5 case. Okay. So basically you agree then that for purposes of summary judgment, the district court is as free to apply the McDonnell-Douglas formula as he would be in something that didn't involve the Labor Code Section in question. Not quite because of the actual language of 1102.5 and 1102.6. The court knows that 1102.6 says that once a prima facie case of retaliatory intent is shown under 1102.5, you, defendant, now must come forward with clear and convincing evidence. So I think that's the point. So you're talking about the standard of basically they've got to come back with. Yes. As opposed to the way the McDonnell-Douglas formula works, right? Exactly. But Judge Whaley found there was retaliatory intent at the prima facie level. And here's why. I believe he had to find that. He actually talks about these facts from the bench during oral argument. And I highlight this to the Court. He says, well, speaking to Mr. Hayes or Mr. Stone, I'm not, I don't recall which one, what do you make about Mr. Cunningham abruptly leaving the meeting on the 7th, after you tell him you've gone outside to law enforcement? Now, none of this is subject to the sham affidavit doctrine. This is not the termination meeting. This is six days before the termination meeting. And the response is, well, you know, they don't know what to say about that. And he says, I can't make a credibility determination on whether that's enough to convince a trier of fact that Mr. Cunningham was genuinely upset. Well, but that's where the sham affidavit comes in, isn't it? No, because that comment doesn't come until the termination meeting on the 13th. And no one disputes that he was fired. I don't even understand how the walkout, how any facts could be inferred from it that would be favorable to your side of the case. It seems to me that when somebody walks out of a meeting, it means they hate each other's guts. I'm not saying they hate each other's guts, Your Honor. Recall what was said before then and what Mr. Cunningham said in his deposition. I was not thinking of terminating Mr. Toitcher as of the beginning of that luncheon. Again, I think that's critical. And they're having a cordial conversation. Yeah, the implication of it to me is as of the beginning of that luncheon, just as he said, I wasn't thinking of terminating him, but he was just so annoying during the luncheon, I couldn't stand him anymore and had to get rid of him. Is that a possible interpretation? Of course. But that's what juries are for. What interpretation is favorable to your side? Because what he does immediately after being told that Mr. Toitcher betrayed the team and went to outside law enforcement, Mr. Cunningham abruptly, angrily gets up and leaves the meeting without a word. Now, I don't know if this is the inescapable conclusion from that, but I think it's an arguable conclusion, and that is that Mr. Cunningham was just given a gut punch and was angry and did not want to say, hey, have a nice day, good talking to you, we will be working together, see you next time. It's I'm out, and six days later, he's fired. Do you want to save any time for rebuttal? It's up to you. Okay. Very good. Let's hear, then, from the Sheriff's Association, please. Thank you, Your Honor. Dennis Hayes, appearing on behalf of the Riverside Sheriff's Association and James Cunningham. It is almost axiomatic now that a party cannot create a triable issue of fact to avoid summary judgment by disagreeing with themselves, and that's exactly what we have here. That's the whole sham affidavit. That's the sham affidavit. It's undisputed that Mr. Toitra has two versions of his reasons for his termination. One version. Why can't lack of loyalty be construed to mean he went outside? Well, when he was talking about the reasons given to him by the termination, there is a remarkable difference between an employee who's not loyal and someone who reports a crime. That's not necessarily related at all. What would be lack of loyalty other than this going outside? What evidence is there? Well, if you go back to the undisputed facts, it's undisputed Mr. Cunningham was the supervisor. It's undisputed that Tanya Conrad came to Mr. Cunningham in tears, very upset. Mr. Toitra had thrown a file at her, had threatened her with termination. She withdrew all that. No, there's no evidence that she withdrew. We just heard counsel say that his evidence is that Mr. McNamara said that Ms. Conrad came to him, and then he told Mr. Toitra that what Ms. Conrad had said. But if you look at the declarations, Ms. Conrad said that never happened. Mr. McNamara said that never happened. Mr. Cunningham said that never happened. So we have to have multiple levels of hearsay, which has no evidentiary basis. That's what's the problem with Mr. Toitra's case. Is this loyalty? I mean, let's say that she did say all those things. Well, I'll finish. She also said that now you remember Mr. Toitra was demoted. He was the trust manager, the administrator, trust administrator. He was demoted, and Mr. Cunningham was put in to manage the trust. And he saw it was a disaster. The forms were wrong. The letters were wrong. The people weren't given their appeal rights. And he redid the whole system. Yeah, but that's what we should talk about. Mr. Toitra said, ignore it. Ignore that. Don't do that. He would rip up Mr. Cunningham's letter. He would tell Mr. Toitra. He would tell Ms. Conrad to rewrite the letter. He would say, don't go into meetings. You asked about this loyalty. Don't go into meetings and don't say anything. Counsel, will you listen to Judge Fletcher? He's going to ask you a question, okay? I'm sorry. Yes, I've been trying to interrupt for about five minutes. I'm sorry. Go ahead. Okay. How do you define loyalty? All of these acts might be grounds for firing the guy, but what is loyalty other than loyalty to the organization? And the only thing that I could see, the lack of loyalty, was that he went outside and complained there. And that is, to me, a possible act of disloyalty. If I have an employee who every day comes in and works against me, who does not do anything that I say, that tries to talk everybody else into disobeying me, is extremely disloyal to me. His whole reason for being seemed to be to create problems for Mr. Cunningham because he didn't like being demoted, and he thought he knew a better way to do it. He didn't think that attorneys should go out on OIS officer-involved shootings. He should be able to do that. He didn't think Mr. Cunningham's letters were right. He didn't think the procedures were right. He ripped apart the files and would do it his own way. He was actively working against Mr. Cunningham as a media supervisor. You're not getting the question. That's disloyal. You're not getting the question. You're making a jury argument. Okay. It's a perfectly reasonable jury argument that what disloyal meant was he's not doing what his boss says. But it's also a jury argument that might be made, and the question is whether a jury could infer that that conduct is insubordination. Perfectly good reason to fire somebody, but a jury might infer that when he said, and disloyalty, that that meant going outside. So what you have to do is not just show that there's a different interpretation, which is what you've been doing, but to show that the inference that disloyalty meant going outside is not supportable on this record. On this record, what Mr. Teutcher did is report to the Unemployment Insurance Appeals Board that he was given reasons for his termination. He, in effect, recounted the conversation on the reasons for his termination, and those reasons did not include that I went out to, in fact, it's the conversation. It's not just the reason for the termination. The words were that and your loyalty. The words that were spoken were that and your loyalty. And that was all that was said. You have to show that it's not an inference that a jury could reasonably draw, that the reference to loyalty meant going outside. Do you understand what I'm saying? Yes, I understand what you're saying. But Mr. Teutcher was talking about what was said, and what was said in his rendition of it was not that it's because you went out and reported it to law enforcement. That's not what was said. The day that Teutcher was fired, did Cunningham know that Teutcher had gone outside? No. No, Mr. Cunningham put in a declaration, had no knowledge whatsoever. Was there any declaration to the contrary that supported an inference that Cunningham did know that Teutcher had gone outside? None whatsoever. In fact, in his deposition, he testified that he had no knowledge of any protected activity. Well, you understand that on summary judgment, just as Cunningham says, it doesn't mean that it's treated as true. If there's evidence to the contrary for purposes of summary judgment, it's treated as though the jury might believe the evidence to the contrary. So I'm not asking what Cunningham said. I want to know, did anyone say anything from which it could be inferred that Cunningham knew on the day that he fired Teutcher that Teutcher had gone outside? None. None whatsoever. The only scrap of evidence is this sham declaration where Mr. Teutcher is reporting about what was said as the reasons for his termination. And what he put in his declaration in opposition to summary judgment in recounting this conversation was that the reason was you went out to law enforcement. And that was the reason he said. But when he went to the unemployment, that's not the reason he said. Had anyone from law enforcement contacted Cunningham prior to the day or the moment that Teutcher was fired? No. Nobody contacted him. No one knew. There's no evidence to support that. Counsel, I just want to be sure that we're all on the same page here. This gets analyzed under McDonnell Douglas, right? Yes, Your Honor. So the district court says that Mr. Teutcher has made out a prima facie case. You also find that there's a legitimate business reason involved. And the whole thing boils down to pretext. And you've got this battle of the sham affidavit, which seems to be what carries the court over the line, that there are no material facts. In a nutshell, that's really what we're talking about, right? There's one other. Okay. There's one other. And in order to find that there are pretexts, the burden has shifted back on the plaintiff to show that there's no facts to support this decision to terminate, or there's insufficient facts, or that was not the actual reason. Okay. So we know about the sham affidavit issue. That carried a lot of weight with the court. Yes. One of the issues in response to both my colleagues' questions and my own, what else is there on the pretext point that cuts either way here? It seems to me some of the discussion we've had deals with the first and second prongs of McDonnell Douglas. That's really not before us. As far as I know. I don't think anybody's contesting those. It all comes down to the pretext. So what besides the sham affidavit issue do you believe buttresses your case? There's just nothing else. I mean, as Kleinfeld pointed out, did the police officer, did anybody else say something that suggested that this is just a pretext, basically? There's absolutely no evidence to support there's a pretext. It's an overwhelming amount of evidence to establish that this is a legitimate basis. When you look at the prior suspension and you look at the demotion and you look at all the different deputies who were harmed by the decisions, when you see Mr. Troitsch admitting that he threw the file, maybe not at the person. He says threw it in the garbage. That was the suspension. This is not a person. There's overwhelming amount. Okay. Does that go to the issue, though, that the plaintiff suggests, that that's really a jury question? This is a material fact. They say it really needs to go to a jury. The judge shouldn't have done this. Only if plaintiff cannot come up with some way of attacking this as a pretext. There has to be some evidence to show that there's no facts supporting the decision to terminate, which obviously is not there. Or there's insufficient facts, which is obviously not there. This is the whole thing. It's obvious. Why is it obvious? Well, there was a huge record as the basis for the termination of misconduct. It's undisputed that Tanya Conrad came to Cunningham ready to resign in tears over the living hell that Mr. Troitsch had put her through. So that's all undisputed. And remember, we're not in a situation where we have to decide, like a judge and jury would, oh, this is a basis for this is just cause or this isn't just cause. But doesn't that go to the second problem with whether there was a legitimate business reason to fire him? Yes, and I think overwhelmingly. I'm not talking about that. Okay. What I'm talking about here is focused exclusively on the issue of pretext. Okay. The big thing going for you is the sham affidavits, the district courts. As you can say this out of both sides of your mouth, there's just nothing here. Is there anything else, is there any weakness in your armor, if you will, on the pretext issue alone that you want us to consider? Because your opposing counsel is going to get up in his remaining time and I'm sure going to tell us, well, what about this, this, this, this, and this? And that goes to pretext, and that's why it ought to go to a jury. Okay. And I know what they are, and I can tell you what they are is a random facts that don't in any way. Okay. What are they? Okay. Well, one, there was a, after Mr. Toitcher is on administrative leave, there is an investigator, Martin Silver, who is calling employees of the Riverside Sheriff's Association at their private homes with their cell phone numbers. RSA does an investigation and finds out that it's, in fact, Grant Paris, a former employee who admitted to giving confidential personnel information away. And this is unrelated to Mr. Toitcher. It's not involved with Mr. Toitcher. There's no belief that Mr. Toitcher did this. In fact, we find out Grant Paris admitted to giving that information. And was that presented to the district court? Yes. And the district court discounted it for the reasons you've indicated, right? And discounted all of these things. One we had already addressed is the double, triple hearsay that Tanya Conrad supposedly told McNamara, who supposedly told Mr. Toitcher that there was a recount, a recant of her testimony of her complaints. And the declarations from all those people involved say, no, in fact, Mr. McNamara, Mr. Toitcher is not even working there anymore. He's on administrative leave. He had his last day. And he has no evidence that this actually occurred other than the multiple levels of hearsay. There is, they're just random sort of events that are transpiring, but there's no causal connection or link to say, aha, based on this, there must be a pretext that the real reason is illegal conduct. And the court found none of that. So because you're almost out of time, all of these issues were presented to the district court. Yes. By plaintiffs, right? Yes. And the district court weighed them and discounted them as either being not material or in the case of the sham affidavit, directly contradicted. Is that basically where we're at from your perspective? I don't know about weighing. Found that they do not establish a pretext. He cannot weigh at the summary judgment stage. No. But he can say that they are not evidence of pretext. I mean, because, you know, there's a car accident in the parking lot doesn't mean that that's a pretext. I mean, you have to have some connection. You have to have some evidentiary basis to say, well, look at this. Based on these actions, he must have known. But, again, a lot of the things happened, you know, after. So basically there was no nexus. No nexus. Okay. Any other questions by my colleagues? Okay. Thank you very much. Your opposing counsel has a brief time there for a response. Thank you, Your Honor. First of all, Mr. Teutcher had not been disciplined in any way up to February of 2005 when he had his performance evaluation. Counsel, this really matters to me. Better get to it. Okay. That reference to loyalty in the letter cannot mean that Teutcher went outside if Cunningham didn't know that Teutcher had gone outside. What is the evidence that when he fired Teutcher, Cunningham knew that Teutcher had gone outside? Three separate specific things, Your Honor. Mr. Cunningham testified in his deposition that he was greatly concerned that Mr. Teutcher had attended meetings with Andre O'Hara, the head of internal affairs, as of July 2005, ER 138 to 140. Mr. Cunningham described an e-mail in his deposition that came from Mr. McNamara in September of 2005, the very month of termination, in which McNamara revealed that he believed Teutcher had made a pretext call to him and that it concerned Teutcher's contact with law enforcement, ER 148 and 192. Dennis Hayes sent a letter on behalf of RSA on September 13, 2005, the very date of the termination, complaining about Martin Silva's brutish tactics of trying to contact RSA employees. In that letter, and this letter is at 112, I'm sorry, 1112, 1113, in that very letter, Mr. Hayes recites, I'll bet your investigation has to do with allegations of misconduct in the Winchell cases, directly on point to Judge Kleinfeld's question. Ms. Conrad recanted, and that's told to Mr. Teutcher by two principals of RSA and RSA LDT. That's not hearsay. Under the federal rules, those are admissions. They both tell him, Tanya Conrad has recanted. That's not hearsay. Mr. McNamara told Mr. Teutcher, oh, this is not right on point, but he told Teutcher he'll be coming back to work. It's the law enforcement thing he wanted. That's it on the law enforcement thing. Does Teutcher say that he told Cunningham at lunch? Yes. This is directly before the Court. Okay. I told him directly, and that's what prompted him to abruptly leave the meeting, and that was my argument. Judge Kleinfeld challenged me on that, and I believe those arguments are going to happen at trial. Any other questions from my colleagues? If not, we thank you both for your argument. The case is just argued and submitted. The final case for argument today is United States v. Bezzeriti or Bezzeretti. Thank you.
judges: Fletcher, Kleinfeld, Smith